James R. Baer and Vera I. Baer v. Commissioner.
Baer v. Commissioner
Docket No. 91653.
United States Tax Court
T.C. Memo 1963-223; 1963 Tax Ct. Memo LEXIS 123; 22 T.C.M. (CCH) 1121; T.C.M. (RIA) 63223; August 21, 1963
Charles E. Prieve and John A. Meyer, for the petitioners. William J. Wise, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined deficiencies in petitioners' income tax for the taxable years and in the amounts set forth below: Taxable Year
Deficiency
1955
$55,782.04
1956
61,106.16
1957
61,459.60
1958
71,469.23
Certain adjustments have been stipulated by the parties. The issues remaining for determination are: 1. Whether respondent is estopped to deny that the properties here in issue were "used in the trade or business" of petitioner by virtue of a judgment of this Court in a prior proceeding involving different properties. 2. Whether the properties here in issue were properties "used in the trade or business" of petitioner within the meaning of section 1231, Internal Revenue Code of 1954. [1]
*125 3. Whether, if certain properties were "used in the trade or business" of petitioner, they fail to qualify, for years prior to the year of their sale, [2] for the depreciation allowance provided by section 167 by reason of the fact that, as of the year of sale, the salvage value, or market value, of each of them was in excess of its depreciated cost. 4. If certain of the properties involved do qualify for the depreciation allowance, what is the useful life over which each of them may be depreciated. Findings of Fact Some of the facts have been stipulated by the parties. Their stipulation, together with attached exhibits, is incorporated herein by this reference. James R. and Vera I. Baer are husband and wife presently residing in Brookfield, Wisconsin. Their joint returns for the calendar years 1955 through 1958 were filed with the district director of internal revenue, Milwaukee, Wisconsin. Vera I. Baer has been joined herein solely by virtue of her participation in filing the above joint returns. Therefore, as used hereinafter, the *126 term "petitioner" will refer only to James R. Baer. Petitioner has been engaged in the business of constructing dwellings in the Milwaukee area since 1925. During the period 1925 to 1938 he constructed single family homes exclusively for resale or on contract for others. However, in 1938 he acquired his first rental property, and although he continued for sometime thereafter to construct houses for resale, he gradually began to build up a "portfolio" of rental properties. The war years, 1942 through 1946, brought many restrictions to the building business. Priorities necessary for obtaining building materials were generally available only through agreement on the part of the builder to hold the completed dwelling for rental. Even then, the materials supplied were of inferior quality. Petitioner constructed a number of houses during the war, many of which were solely for resale. However, as funds became available and the demands of the construction business permitted, petitioner also added houses to his rental "portfolio." These houses, constructed of war-time materials and often not in the best neighborhoods, were rented by petitioner for a substantial period of time and then sold. *127 Petitioner considered each of the rental houses to have been investment property used in his trade or business and so, for the years 1943 through 1946, reported the gain on the sale of each as capital gain. Thereafter, the Commissioner of Internal Revenue challenged petitioner's reporting of this gain on the ground that the rental houses were not used in petitioner's trade or business, but were held by petitioner primarily for sale to customers in the ordinary course of his construction business. In time, this Court was requested to pass upon the correctness of the Commissioner's determination. We held in James R. Baer, Memorandum Opinion dated May 26, 1952, that although Baer's reasons for selling the houses were varied, [3] it was "fair to conclude from all of the evidence that he did not sell them in the ordinary course of his construction business," but retained them for the primary purpose of renting them out. *128 For some time subsequent to 1946, petitioner continued to construct dwellings both for sale to or on contract for others and for his own rental account. Although the majority of the rental properties built during this period were single family dwellings, several two and four family apartment buildings were also built and rented out. In 1947 petitioner constructed what was to be his first large, i.e., more than eight unit, apartment building on Glenview Avenue. This building contained 16 apartments, was built of brick and masonry block, and had a full basement. Central heating was also provided. Petitioner found that multiple rental units of more than eight in a single building presented many advantages, both from a management and a maintenance standpoint, over the rental of smaller dwellings. In 1949 and 1950 he therefore constructed a similar multiple unit complex containing 16 apartments on Harwood Avenue. Subsequent to 1952, petitioner ceased construction of properties for sale to others. All properties constructed thereafter by petitioner were for his rental account. Between 1952 and 1955 petitioner built a number of small apartment buildings containing two, four, and eight *129 units. These apartments were of brick veneer over wood frame construction and for the most part were put up on land belonging to petitioner. Petitioner also constructed during this time and prior to 1959 a total of 11 large apartment buildings containing from 12 to 32 units. These buildings were generally two stories in height, of brick veneer and without basements. In most of them heat was supplied by means of individual units placed in the walls of each apartment. Between 1949 and 1955, petitioner sold 8 rental properties on installment land contract. Because gain from these sales was reported during the taxable years here at issue, they are involved in this proceeding. During the taxable years 1955 through 1958, petitioner sold a total of 22 rental properties consisting of two, four, and eight unit apartment houses. These apartment houses were of brick veneer over wood frame construction. Petitioner's average holding period for the rental properties which he sold in 1955 was 30.5 months; for 1956, 38.8 months; for 1957, 45 months; and for 1958, 61 months. Many of the properties were sold by petitioner to relatives or friends. The sale of a number were solicited from him by a real *130 estate agent who often had the prospective purchaser already lined up. While petitioner incurred large expense in advertising his various properties "for rent" he expended only nominal sums in advertising properties which were sold during the taxable years. A number of bona fide business reasons prompted the sale of petitioner's small apartment buildings. By far the best method of renting apartments and collecting rentals is through the medium of a manager resident upon the property. However, it is not economically feasible to maintain such a manager in a small apartment building. Proliferation of the automobile has made tenant parking a must for apartment buildings, yet many of the buildings which petitioner sold had inadequate parking. Some buildings were sold because they were poorly located, being either in industrial areas, on high inclines, traffic congested streets, or in one case, between a gasoline filling station and an office building. The overabundance of a particular type of apartment facility, viz., efficiency units, in a given area made petitioner's continued investment in that area unsound and sometimes prompted a sale. And, overriding all the factors previously mentioned, *131 was the desire of petitioner to convert his investment from uneconomical small rental buildings into larger buildings which promised a greater financial return. The majority of the rental properties built by petitioner were constructed on land already owned by him. In 1953, petitioner acquired several lots, zoned for apartments, with a future view to constructing rental properties upon them. However, in 1955 petitioner was approached by the representative of a national chain grocery store which was desirous of purchasing these lots and after some negotiation, petitioner was induced to sell them. These lots were held by petitioner primarily for the purpose of constructing apartments on them and not for sale. The following schedules contain pertinent information concerning all of the properties involved in this proceeding: SCHEDULE A Properties Sold on Installment Land Contract Prior to 1955 - Installment Gain Reported After 1955 No.
No.
Depreciated
of
Date
Months
Cost Year
Sale
Total
Description
Units
Sold
Held
of Sale
Price
Gain
1216-18 N. 47th St.
2
8/ 4/49
19
$15,007.16
$20,703.94
$ 4,696.80
2615 Victory Lane
4
5/ 1/53
12
35,368.69
45,000.00
9,213.89
6738 W. Lisbon Ave.
4
10/24/53
17
31,538.30
41,000.00
7,672.69
6730 W. Lisbon Ave.
4
4/23/54
24
31,556.57
41,000.00
7,803.43
7609 W. Clark St.
4
9/15/54
57
21,844.74
38,000.00
14,635.26
2571 Wauwatosa Ave.
4
11/13/54
59
20,559.89
37,500.00
16,940.15
7225 W. Vienna
*
10/ 1/52
**
20,500.00
3,501.60
2115 N. 68th St.
*
12/ 9/50
**
10,150.00
1,155.86
*132 Gain Re-
Gain Reported
ported
Prior
Description
to 1/1/55
1955
1956
1957
1958
1216-18 N. 47th St.
$1,525.41
$ 200.52
$ 207.04
$2,763.83
2615 Victory Lane
2,079.00
288.52
6,846.37
6738 W. Lisbon Ave.
1,861.68
5,811.05
6730 W. Lisbon Ave.
836.95
118.62
114.66
6,733.20
7609 W. Clark St.
2,398.56
428.38
416.97
428.39
$ 440.57
2571 Wauwatosa Ave.
2,742.10
1,242.19
872.81
581.34
11,501.71
7225 W. Vienna
466.47
78.55
2,956.58
2115 N. 68th St.
227.78
38.53
35.56
853.99
SCHEDULE B Properties Sold During 1955-1958 Depre-
ciated
Number
Number
Cost as
of
Date
Months
of Year
Selling
Description
Units
Sold
Held
of Sale
Price
SALES - 1955
201 N. 78th St.
2
4/12/55
48 1/2
$16,263.54
$18,500
5609 W. Wisconsin
2
8/15/55
34
22,768.73
28,500
424 N. 68th St.
2
1/15/55
26
20,679.25
26,500
1265 N. 68th St.
2
12/ 3/55
26 1/2
18,714.65
20,000
9216 W. Bluemound
6
9/30/55
13
54,634.23
63,000
2610 W. Victory Lane 1/4
of 4
7/ 1/55
18
12,338.33
12,550
523 N. 63rd St.
2
12/ 1/55
53 1/2
23,890.41
27,000
6729 W. Bluemound
2
12/10/55
38
22,958.51
26,750
3853 N. 15th St.
8
7/ 1/55
20
56,986.00
65,000
1609 E. Menlo
2
8/ 1/55
20
21,494.37
26,980
1613 E. Menlo
2
9/30/55
16
21,494.36
26,900
1617 E. Menlo
2
6/10/55
20
20,527.68
26,900
SALES - 1956
402 N. 68th St.
2
1/16/56
37
17,645.30
22,500
1100 N. 37th St.
8
4/13/56
47
55,457.80
66,500
412 N. 68th St.
2
1/16/56
39
17,928.36
22,500
2705 W. Courtland
8
5/ 8/56
42
46,882.08
63,000
4619 N. 27th St.
8
9/26/56
51
51,369.40
67,000
5542 N. 31st St.
8
6/ 1/56
22
55,232.24
68,000
SALES - 1957
6523 W. Powell
2
1/16/57
30
21,735.99
27,500
4520 W. Martin Dr.
4
2/ 1/57
52
35,386.51
44,400
4512 W. Martin Dr.
8
2/ 1/57
56
51,739.51
65,392
SALES - 1958
1627 E. Menlo
2
11/ 1/58
48
19,822.10
26,000
*133 Gain Recom-
% of
Depre-
puted to
Gain on
ciation
Gain
Eliminate
Install-
Year of
Per Tax
Depr. in
ment
Description
Sale
Return
Yr. of Sale
Sales
SALES - 1955
201 N. 78th St.
$ 130.05
$ 4,011.10
$ 3,881.05
5609 W. Wisconsin
447.78
6,070.27
5,622.49
424 N. 68th St.
23.75
5,721.98
5,698.23
1265 N. 68th St.
*
9216 W. Bluemound
2,318.89
11,492.55
9,309.15
2610 W. Victory Lane 1/4
300.42
578.69
278.97
523 N. 63rd St.
623.50
5,671.59
5,048.09
18.83
6729 W. Bluemound
601.35
4,699.59
4,098.24
15.32
3853 N. 15th St.
707.11
9,180.15
8,473.04
13.04
1609 E. Menlo
354.27
6,551.45
6,197.18
22.97
1613 E. Menlo
485.19
6,517.74
6,032.55
22.45
1617 E. Menlo
271.99
5,830.36
5,558.37
20.66
SALES - 1956
402 N. 68th St.
20.18
5,930.77
5,910.59
1100 N. 37th St.
547.77
13,309.79
12,762.02
412 N. 68th St.
20.54
5,858.80
5,838.26
25.95
2705 W. Courtland
406.55
18,801.14
18,394.59
29.2
4619 N. 27th St.
943.96
18,430.09
17,486.13
26.1
5542 N. 31st St.
1,134.50
15,916.09
14,781.59
21.74
SALES - 1957
6523 W. Powell
43.51
8,036.80
7,993.29
4520 W. Martin Dr.
83.47
12,435.61
12,352.14
27.82
4512 W. Martin Dr.
108.75
20,203.79
20,095.04
30.73
SALES - 1958
1627 E. Menlo
520.36
9,060.40
8,540.04
32.85
*134 Recomputed Gain on Installment Sales
Description
1955
1956
1957
1958
SALES - 1955
201 N. 78th St.
5609 W. Wisconsin
424 N. 68th St.
1265 N. 68th St.
9216 W. Bluemound
2610 W. Victory Lane 1/4
523 N. 63rd St.
$ 393.91
$ 113.04
$4,575.94
6729 W. Bluemound
459.60
125.53
129.75
$ 140.00
3853 N. 15th St.
1,508.75
6,964.29
1609 E. Menlo
561.61
240.87
246.01
245.04
1613 E. Menlo
497.49
167.65
167.65
162.34
1617 E. Menlo
590.75
146.15
146.64
143.14
SALES - 1956
402 N. 68th St.
1100 N. 37th St.
412 N. 68th St.
803.12
172.95
178.02
2705 W. Courtland
3,578.10
1,148.89
1,192.15
4619 N. 27th St.
1,494.06
2,115.83
13,877.11
5542 N. 31st St.
2,617.32
775.46
806.29
SALES - 1957
6523 W. Powell
4520 W. Martin Dr.
1,260.46
640.69
4512 W. Martin Dr.
1,392.30
707.71
SALES - 1958
1627 E. Menlo
718.05
SCHDULE C Properties Retained After 1958 Depreciation Claimed During 1955-1958 Deprecia-
Num-
tion
ber
Rate
Depreciation Claimed
of
Per
Description
Units
Return
1955
919 Glenview Ave.
16
3%
$ 1,898.96
7838-44 Harwood Ave.
16
3%
2,433.45
2660-66 N. Humboldt
32
3%
4,405.72
400-2 N. 92nd St.
2
* 6%
1,195.36
408-10 N. 92nd St.
2
6%
1,205.73
414-16 N. 92nd St.
2
6%
1,203.93
6609-13-19 W. Lisbon
12
6%
3,948.15
6529-31 W. Powell St.
2
6%
1,163.12
4231-45 N. 27th St.
32
6%
10,893.11
5045-65 N. Hopkins
32
6%
7,696.13
5161 N. Hopkins
24
6%
2,178.20
5525-55 N. Teutonia Ave.
16
6%
6421 W. Powell Pl.
2
6%
6427 W. Powell Pl.
2
6%
5230 N. Sherman
32
6%
4208-24 W. Villard
32
6%
131 Hoyt Ave.
16
6%
3736-50 N. Humboldt
32
6%
*135 Depreciation Claimed
Description
1956
1957
1958
919 Glenview Ave.
$ 1,901.50
$ 1,902.25
$ 1,903.17
7838-44 Harwood Ave.
2,435.75
2,435.75
2,439.03
2660-66 N. Humboldt
4,434.56
4,434.56
4,434.56
400-2 N. 92nd St.
1,155.48
1,094.30
1,038.68
408-10 N. 92nd St.
1,153.78
1,087.84
1,031.22
414-16 N. 92nd St.
1,152.13
1,097.57
1,052.79
6609-13-19 W. Lisbon
3,760.94
3,550.40
3,340.28
6529-31 W. Powell St.
1,093.33
1,027.75
966.06
4231-45 N. 27th St.
10,741.40
10,119.95
9,527.11
5045-65 N. Hopkins
10,815.63
10,188.94
9,581.90
5161 N. Hopkins
9,205.60
8,863.45
8,144.78
5525-55 N. Teutonia Ave.
8,818.77
5,935.97
5,585.89
6421 W. Powell Pl.
683.15
1,328.13
1,261.08
6427 W. Powell Pl.
560.20
1,312.41
1,246.80
5230 N. Sherman
481.34
11,897.53
12,699.27
4208-24 W. Villard
4,097.29
12,992.93
131 Hoyt Ave.
2,935.67
3736-50 N. Humboldt
2,093.24
SCHEDULE D Companison of Gain From Sales and Rentals for Taxable Years 1955 through 1958 Number
Gain Adjusted to
Buildings
Gross
eilminate Depr.
Gross
Net
Year
Sold
Selling Price
in Yr. of Sale
Rentals
Rentals [1]
1955
12
$368,580.00
$ 60,196.66
$ 249,384.45
$115,133.22
1956
6
309,500.00
75,173.18
262,365.04
120,303.87
1957
3
137,292.00
40,440.49
281,996.17
122,007.24
1958
1
26,000.00
8,540.04
323,985.32
125,957.18
Total
22
$841,372.00
$184,350.37
$1,117,730.98
$483,401.51
*136 Ultimate Findings All of the properties enumerated in the above schedules were or are "used in the trade or business" of petitioner and none of them were or are held "primarily for sale to customers" within the purview of section 1231. The useful life of all of the properties with the exception of the Glenview and Harwood apartment buildings is 33 1/3 years. The useful life of the Glenview and Harwood properties is 45 years. Opinion Section 1231(a) of the Code provides that gain realized on the sale of "property used in the trade or business" which is held for more than 6 months shall be considered as long-term capital gain. The term "property used in the trade or business" includes real property, which is held for more than 6 months and used in the taxpayer's business, unless such property is held by the taxpayer primarily for sale to customers in the ordinary course of business. Section 1231(b). Narrowly drawn, the question presented by this case is whether the properties involved were held by petitioner primarily for sale to customers in the ordinary course of business. To dispose of petitioner's *137 first contention - i.e., that respondent is collaterally estopped to deny the properties here in issue were "used in the trade or business" of petitioner because of an earlier judgment of this Court which involved different properties - we need only cite the case of Commissioner v. Sunnen, 333 U.S. 591 (1948)[4] and observe that, where the issue common to both proceedings is whether at a particular time certain property is used in the trade or business and the second proceeding involves a different time and property different from that of the first, it cannot be said that "the matter raised in the second suit is identical in all respects with that decided in the first proceeding * * *." The question of whether property *138 is held principally for use in a taxpayer's trade or business as opposed to being held primarily for sale to customers is one of fact. We are persuaded by all of the evidence presented that petitioner's primary purpose in holding the properties in issue was to rent them out and not to sell them. The majority of the properties involved were profitably rented for substantial periods of time prior to being sold. The sale of each was prompted by bona fide business reasons, including a desire to improve the over-all quality of his investment, on petitioner's part and accomplished with a minimum of sales activity by petitioner himself. We find that all of the properties in issue were "used in the trade or business" of petitioner within the meaning of section 1231(b) of the Code. Section 167(a) provides that there shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear "of property used in the trade or business." Section 167(b) provides that "the term 'reasonable allowance' shall include (but shall not be limited to) an allowance computed in accordance with regulations prescribed by the Secretary or his delegate * * *" The pertinent portions *139 of the applicable income tax regulations are set forth below. [5]
*140 In computing depreciation upon the properties which were sold during the period 1955 through 1958, as well as those retained during and after that period, petitioner used both the straight line and the double declining balance method based upon a useful life of 33 1/3 years, or a 3 percent annual rate. Except for the Harwood and Glenview Avenue buildings, respondent disallowed all depreciation claimed on all of petitioner's buildings (both those sold and those retained) for the taxable years on the ground that none of them (excluding Harwood and Glenview) constituted "property used in the trade or business" of petitioner within the meaning of section 167(a). We have found that all of the properties involved in this proceeding were "used in the trade or business" of petitioner. Accordingly, we find respondent to have been in error in disallowing depreciation on this ground. Alternatively, respondent contends that if the properties do come within the purview of section 167(a) they nevertheless fail to qualify for the depreciation deduction because as of the year of sale, with respect to those properties sold, the salvage value, or market value, of each of them was in excess of its *141 depreciated cost. Further, as to those properties retained, the salvage value could reasonably be expected to exceed depreciated cost because of a rising market. We have rejected this argument in a similar case. Randolph D. Rouse, 39 T.C. 70 (1962). Here, as in that case, we find that petitioner's rental properties did not constitute the "type of asset, where the experience of the taxpayers clearly indicates a utilization of the asset for a substantially shorter period than its full economic life." Here, as there, we construe the facts as indicating that petitioner did not know how long his rental properties would be of profitable use to him or how long they might be utilized until no longer capable of functioning. "Therefore the depreciation base should be 'recognized as to the number of years the asset is expected to function profitably in use'." Rouse, supra.Based upon all of the evidence, we find that all of the buildings, with the exception of the Harwood and Glenview buildings, could be "expected to function profitably in use for" a period of 33 1/3 years. The Harwood and Glenview apartments, constructed of sterner stuff than the rest, are found to *142 have a useful life of 45 years. Decision will be entered under Rule 50. Footnotes
1. All Code references herein are to the Internal Revenue Code of 1954 unless otherwise noted.↩
2. Petitioner has conceded that no depreciation is allowable upon any of the properties at issue for the year in which they were sold.↩
3. "Some [of the houses] * * * were not well located, so he sold them and invested the proceeds in constructing houses in a better neigh-borhood. Houses which were poorly planned he sold to enable him to build others better planned. The houses were cheaply constructed and maintenance costs increased sharply after they had been rented from three to five years and for that reason he sold the older properties and took new ones into his investment account. Some were furnished with poor war-time materials and he sold those after restrictions permitted construction with better materials. Single and two family properties were sold and replaced in the investment account with multifamily buildings which produced better net rentals. Units, limited to low rentals were sold in order to replace them with others for which higher rentals were permitted."↩
*. Single family dwelling. ↩
**. Held for less than 6 months. Gain reported as short-term capital gain.↩
*. Depreciation not included because no gain realized.↩
*. Petitioners elected to use double declining balance method of depreciation, based on 33 1/3 year life, whereever figure 6% is used.↩
1. Adjusted for depreciation and other expenses except interest on mortgages.↩
4. Where two cases involve income taxes in different taxable years, collateral estoppel must be used with its limitations carefully in mind so as to avoid injustice. It must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged." Commissioner v. Sunnen, 333 U.S. 591, 599↩ (1948).
5. § 1.167(a)-1 Depreciation in general. (a) Reasonable allowance. Section 167(a) provides that a reasonable allowance for the exhaustion, wear and tear, and obsolescence of property used in the trade or business or of property held by the taxpayer for the production of income shall be allowed as a depreciation deduction. The allowance is that amount which should be set aside for the taxable year in accordance with a reasonably consistent plan (not necessarily at a uniform rate), so that the aggregate of the amounts set aside, plus the salvage value, will, at the end of the estimated useful life of the depreciable property, equal the cost or other basis of the property as provided in section 167(f) and § 1.167(f)-1. An asset shall not be depreciated below a reasonable salvage value under any method of computing depreciation. See paragraph (c) of this section for definition of salvage. * * * § 1.167(b)-0 Methods of computing depreciation. (a) In general. Any reasonable and consistently applied method of computing depreciation may be used or continued in use under section 167. Regardless of the method used in computing depreciation, deductions for depreciation shall not exceed such amounts as may be necessary to recover the unrecovered cost or other basis less salvage during the remaining useful life of the property. The reasonableness of any claim for depreciation shall be determined upon the basis of conditions known to exist at the end of the period for which the return is made. * * *↩